UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARY E. M. P.[1], | ) |
|        Plaintiff, | ) |
| v. | ) Case No. 3:21-cv-582 |
| KILOLO KIJAKAZI[2], | ) |
| Commissioner of Social Security, | ) |
|        Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Mary P., on August 6, 2021. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, May P., filed applications for Disability Insurance Benefits, alleging a disability onset date of February 7, 2017. (Tr. 10). The Disability Determination Bureau denied Mary P.'s applications initially on August 23, 2019, and again upon reconsideration on February 28, 2020. (Tr. 15, 108, 130). Mary P. subsequently filed a timely request for a hearing on March 23, 2020. (Tr. 148). A hearing was held on November 19, 2020, before Administrative Law Judge (ALJ) Charles Thorbjornsen. (Tr. 36). Vocational Expert (VE) Clifford Brady appeared at the hearing. (Tr. 36). The ALJ issued an unfavorable decision on February 10, 2021. (Tr. 10-23). The Appeals Council denied review making the ALJ's decision the final decision of the

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

Commissioner. (Tr. 1-6).

First, the ALJ found that Mary P. last met the insured status requirements of the Social Security Act on September 30, 2020. (Tr. 12). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Mary P. did not engage in substantial activity from her alleged onset date of February 7, 2017 through her date last insured of September 30, 2020. (Tr. 12).

At step two, the ALJ determined that, through the date last insured, Mary P. had the severe impairments of degenerative disc disease of the lumbar spine, carpal tunnel syndrome, depressive disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), and obesity. (Tr. 12). Mary P. also alleged disability due to Type II diabetes mellitus, overeating, breast cancer, cervical spine and thoracic spine impairments, osteoarthritis of the right knee, and migraines. (Tr. 13). However, the ALJ indicated that those impairments caused no more than minimal limitations on her ability to engage in basic work activities and considered them non-severe. (Tr. 13). The ALJ also found that Mary P.'s fibromyalgia claim was a non-medically determinable impairment because the records related to it were not supported by objective evidence. (Tr. 13).

At step three, the ALJ concluded that through the date last insured, Mary P. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 13-16). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 13-16). Next, the ALJ considered whether the severity of Mary P.'s mental impairments met or medically equaled the criteria of Listings 1.04, 11.14, 13.10, 12.04, 12.06, 12.15, and SSR 19-2p. (Tr. 14). In doing so, the ALJ considered the paragraph B criteria for mental

impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. (Tr. 14-16). The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while an extreme limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 14). The ALJ found that Mary P. had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. (Tr. 14-15). Since Mary P.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B. criteria were not satisfied. (Tr. 16).

After consideration of the entire record, the ALJ then assessed Mary P.'s residual functional capacity (RFC) as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift and carry twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours and stand and/or walk for six hours for a total of two hours in a workday, with normal breaks. The claimant is limited to frequent, but not constant, handling and fingering with the left and right hand. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to work at unprotected heights, work around moving mechanical parts, work involving dust, odors, fumes, and pulmonary irritants, and work involving vibration. The claimant is able to perform simple, routine tasks. The claimant is able to interact occasionally with supervisors and coworkers using brief and superficial contact defined as no lower than an 8 in terms of the 5th digit of the DOT Code. The claimant cannot perform work that involves direct interaction with the public.

(Tr. 16). After considering the evidence, the ALJ found that Mary P.'s medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 17). However, he found that the Mary P.'s statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17).

At step four, the ALJ found that through the date last insured, Mary P. was unable to perform her past relevant work as a sales agent (insurance). (Tr. 21). However, the ALJ found jobs that existed in significant numbers in the national economy that Mary P. could perform. (Tr. 22). Therefore, the ALJ found that Mary P. was not under a disability, as defined in the Social Security Act, at any time from February 7, 2017, the alleged onset date, through September 30, 2020. (Tr. 23).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's

decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled, and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth

step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Mary P. has requested that the court remand this matter for additional proceedings. In her appeal, she alleges that the ALJ erred in relying on VE testimony that was not supported by substantial evidence and in considering the state agency consultant opinions when determining the RFC.

First, Mary P. alleges that the ALJ erred at step five by relying on faulty VE testimony regarding both the job types and job numbers that she could perform. Specifically, she asserts that the ALJ erred in adopting the VE's testimony regarding job numbers, because she claims that the VE could not substantially support his position. At step five, the burden shifts from the claimant to the Commissioner. ***Briscoe ex rel. Taylor v. Barnhart***, 425 F.3d 345, 352 (7th Cir. 2005). The Commissioner must establish that a claimant's RFC allows her to engage in work found in "significant numbers" in the national economy. ***Liskowitz v. Astrue***, 559 F.3d 736, 742-43 (7th Cir. 2009); *see* **20 C.F.R. §§ 404.1566, 416.966**. Relying on the VE's testimony, the ALJ found that Mary P. was capable of performing the following jobs given her RFC: final

6

assembler (with 9,200 jobs nationally), eyewear polisher (with 10,100 jobs nationally), and addresser (with 8,300 jobs nationally). (Tr. 22). Mary P. argues that 27,600 jobs do not amount to "significant numbers," therefore, the Commissioner's burden has not been satisfied.

The Seventh Circuit has not established a threshold for what constitutes significant numbers to satisfy the step five requirement. *See Weatherbee v. Astrue*, 549 F.3d 565, 572 (7th Cir. 2011) (finding 140,000 positions available nationally to be "well above the threshold for significance," but declining to identify the threshold). The Seventh Circuit has held in two unpublished opinions that as few as 30,000 jobs nationally are significant, but both cases, along with *Weatherbee*, rely on *Liskowitz*, focused on regional numbers rather than national numbers. *Liskowitz*, 559 F.3d at 743; *Primm v. Saul*, 789 Fed. Appx 539, 546 (7th Cir. 2019); *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021).

District judges in this circuit do not agree as to whether it is proper to rely on *Liskowitz* in discussing what constitutes "significant numbers" nationally, and some have "accused the Seventh Circuit of misapplying *Liskowitz* in cases (like *Mitchell, Weatherbee, and Primm*) involving national numbers." *Engel v. Kijakazi,* No. 20-CV-1206-SCD, 2021 WL 4843871, at *11 (E.D. Wis. Oct. 18, 2021) (collecting cases). Others, like *Engel*, assert that it is possible the Seventh Circuit is indicating that reliance on *Liskowitz* is proper. *Id.* "[I]t appears from the Seventh Circuit's interpretation of its own prior holding in *Liskowitz* that 1,000 jobs nationally can be a significant number of jobs." *Id.*

Regardless of whether *Liskowitz* may be considered precedential for national job numbers, many courts have found that numbers as low as 6,000 national jobs to be a significant number. *Engel*, at *11 (collecting cases). Many courts also have found that 27,600 national jobs may not be a significant number, especially where jobs identified by the VE are eliminated. *See*

7

*Douglas G. v. Kijakazi,* No. 19-CV-7033, 2021 WL 3849627, at *4-5 (N.D. Ill. Aug. 27, 2021) (finding that where two of three jobs identified by the VE were eliminated, and the single position left had 27,000 jobs nationally, the court could not determine whether substantial evidence supported the step five findings, as the VE's testimony related to significant numbers was based on all three positions); *John C. v. Saul*, 4:19-CV-4111, 2021 WL 794780, at *5-6 (C.D. Ill. Mar. 2, 2021) (finding that the Commissioner did not meet her burden to show that 20,000 jobs nationally is a significant number).

At the hearing, the ALJ asked the VE whether the jobs were representative of the types of jobs someone with Mary P.'s limitations could perform, and the VE confirmed that those were not the only jobs available to someone with Mary P.'s RFC limitations. However, the VE did state that there were "not a ton of sedentary, unskilled jobs," with no further elaboration. (Tr. 79). Therefore, it is possible that more than 27,600 jobs exist in the national economy that Mary P. can perform, but the court cannot determine whether other jobs existed in substantial numbers that Mary P. could perform based on the VE's testimony alone.

While it is unclear whether 27,600 jobs constitutes a substantial number under Seventh Circuit caselaw, it is clear that the VE erred when he failed to properly address Mary P.'s allegation that the Addresser job did not exist in the economy to the extent that he claimed. Mary P.'s representative stated at the hearing that the Seventh Circuit has stated *in dicta* that the Addresser was "not exactly a job that's performed in the modern economy right now." (Tr. 79). The VE responded by saying that the job of Addresser was "alive and well," though it may be done "a little bit differently" now. (Tr. 80). The VE went on to say that although "there [were not] a whole lot of Addresser jobs," he felt "the percentage [wa]s appropriate." (Tr. 80).

The job of Addresser is defined in the DOT as addressing envelopes, cards, advertising

8

literature, or packages by hand or by typewriter. ***Dictionary of Occupational Titles Index 209.587-010***. Multiple District Courts across the country have found that the job of Addresser is obsolete. *See **Yanke v. Kijakazi***, 2021 WL 4441188, at *4 (E.D. Wis. Sept. 28, 2021) (collecting cases); ***Jason Robert F. v. Comm'r Soc. Sec. Admin.,*** No. 3:20-CV-00201-BR, 2021 WL 1010946, at *8 (D. Or. Mar. 16, 2021) (concluding that "the job of Addresser is obsolete, and, therefore, the ALJ erred at Step Five when she found that job exists in significant numbers in the national economy."). A 2011 Social Security Administration medical-vocational claims review also noted the same. *See **N.B. v. Saul***, No. 20-CV-01138-LB, 2021 WL 1947526, at *11 (N.D. Cal. May 14, 2021). The ALJ did not readily accept the VE's job numbers with regard to the job of Addresser. The ALJ asked the VE to respond to Mary P.'s representative's claims that the job was obsolete. (Tr. 79-80). As in ***Yanke***, however, the VE's response was less than satisfactory. ***Yanke***, at *4 (finding that "[w]hether the ALJ relied on the numbers for those two completely outdated jobs [including the job of Addresser], or the VE's attempt to modernize the jobs with an amorphous description … is not based on substantial evidence. For this reason, remand is required").

The VE acknowledged that the job had likely changed over time and attempted to modernize the job without providing any insight as to how the job had changed or whether it still would involve the same type of skills. (Tr. 80). Instead, the VE responded by discounting a study that found that the job of Surveillance System Monitor was obsolete because it was based on a small sample size. He attempted to use that to support his findings regarding the Addresser job and his opinion that it was not obsolete. (Tr. 80). However, that was pure speculation and not based in evidence. (Tr. 80). Since, the VE's testimony was not supported by substantial evidence, the ALJ's subsequent reliance on it was improper.

The VE's error regarding the Addresser job brings his testimony regarding job numbers into question. If the Addresser job is obsolete, then the VE only found 19,200 jobs that Mary P. could have performed. (Tr. 22). Any argument that the VE's testimony was harmless error fails. Although the VE stated that the jobs were simply representative and did not encompass every job Mary P. could perform, he also specifically stated that there were only a small number of sedentary, unskilled jobs that existed. (Tr. 80). Such a statement makes it difficult for the Court to provide meaningful review, as it is unclear how many other jobs would exist in the national economy. The ALJ's error in relying on VE testimony that was not supported by substantial evidence requires remand. ***Britton v. Astrue***, 521 F.3d 799, 803 (7th Cir. 2008) ("A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated").

Mary P. makes other arguments regarding the RFC and opinion evidence. However, because the ALJ erred in relying on unreliable VE testimony, the court need not address the additional arguments at this time. The ALJ will have the opportunity to revisit these other issues on remand.

 Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

ENTERED this 29th day of September, 2022.

/s/ Andrew P. Rodovich  
United States Magistrate Judge